## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIEGO RODRIGUEZ,** | : | |
| | : | |
| **Plaintiff** | | **CIVIL ACTION NO. 3:14-1149** |
| | : | |
| **v.** | | **(JUDGE MANNION)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.    INTRODUCTION

Pending before the court is the motion for summary judgment, (Doc. 19), of the United States of America on plaintiff's claims brought under the Federal Tort Claims Act ("FTCA") for medical negligence and negligent hiring or supervision of outside medical contractors. For the reasons set forth below, the court will **GRANT** the United States' motion.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The plaintiff, Diego Rodriguez, is an inmate currently housed at the Federal Correctional Institute in Allenwood, Pennsylvania ("FCI Allenwood"). He was housed at the United States Penitentiary in Lewisburg ("USP Lewisburg") for all times relevant to the instant action. (Doc. 1, ¶ 6). This action relates to the medical diagnosis and treatment the plaintiff received while in federal custody at USP Lewisburg. The plaintiff developed kidney

stones and was diagnosed and treated by both BOP medical staff and outside contract physicians in 2012. Since all parties are familiar with the specific facts in this case and the material facts will be recounted at length below, the court need not provide a detailed factual background here.

As a result of the abovementioned events, the plaintiff filed a complaint in federal court on June 16, 2014 alleging that the defendant, the United States, is liable for injuries resulting from the Bureau of Prisons and its employees' negligence. The plaintiff specifically alleges: medical personnel at the prison were negligent in diagnosing and treating the plaintiff's kidney stone; the Bureau of Prisons was negligent for not maintaining an adequate health services policy and failing to train its health services employees; and finally the Bureau of Prisons was negligent in maintaining an inadequate contract policy for outsourcing health care issues. (Doc. 1, pp. 6-7). On October 27, 2014, the defendant filed a "Motion to Dismiss, or, in the Alternative, for Summary Judgment." (Doc. 10). On November 24, 2014, the defendant timely filed a brief in support of the motion, in which the defendant withdrew its alternative motion for summary judgment. (Doc. 13). The plaintiff moved for an extension of time to file a brief in opposition to the motion on December 12, 2014, (Doc. 14), which the court subsequently granted. (Doc. 15). Then, on January 14, 2015, the plaintiff filed a motion for extension of time to file a certificate of merit, and with this motion, the plaintiff attached two certificates of merit relating to claims against Dr. Chopra and the United

2

States. (Doc. 16). The plaintiff subsequently filed a brief in opposition to the motion to dismiss on January 20, 2015. (Doc. 17). In response, the defendant filed a Reply Brief on February 2, 2015, in which it acknowledged that the plaintiff's failure to file a certificate of merit, was "no longer an issue for the purposes of [the] Motion." (Doc. 18, p. 1).

Immediately thereafter, the defendant filed a motion for summary judgment on the grounds that the plaintiff is barred from presenting an expert to support his claims, and therefore cannot prove elements necessary to prove medical negligence (professional negligence) and any claims related to such negligence. (Doc. 19). The defendant also argues that it is entitled to summary judgment because the plaintiff's "claim for negligent hiring, supervision, and retention of the independent contractors is barred by the discretionary function exception to the FTCA." (Doc. 21, p. 1). On April 2, 2015, the plaintiff responded by filing a motion for extension of time to respond to the defendant's summary judgment motion, which this court subsequently granted. (Doc. 22; Doc. 23). On June 2, 2015, the deadline for filing his opposition to the motion for summary judgment, the plaintiff submitted both a motion for leave to conduct additional discovery pursuant to Rule 56(d) of the Federal Rule, (Doc. 25), as well as a motion for a second extension of time to respond to the defendant's summary judgment motion. (Doc. 26). The plaintiff subsequently filed an additional motion, on June 12, 2015, requesting an extension of time to file a certificate of merit. (Doc. 27).

3

On June 19, 2015, the defendant filed a brief in opposition to the plaintiff's motion for additional discovery, (Doc. 28), to which the plaintiff filed a reply brief on July 27, 2015. (Doc. 30). Just prior to filing this reply, the plaintiff also filed a motion for appointment of counsel and an expert witness. (Doc. 29).

On March 28, 2016, this court ruled upon all the abovementioned motions, less the motion for summary judgment. Specifically, the court granted the defendant's motion to dismiss to the extent that any claim asserted by the plaintiff seeks to hold the United States liable for the acts or omissions of any independent contractor. (Doc. 32). The court also denied the plaintiff's motion for extension of time to file a certificate of merit as well as his motion for appointment of counsel. (Doc. 34). Finally, the court denied the plaintiff's motion for additional discovery, but granted the plaintiff's motion for an extension of time to file a response to the motion for summary judgment. (Doc. 36). The plaintiff was given until April 29, 2016 to file his response to the defendant's motion for summary judgment, and was subsequently granted an extension of time to file his statement of material facts by May 20, 2016. (Doc. 39). On May 6, 2016, the plaintiff filed a Brief in Response to the defendant's Motion for Summary Judgment, (Doc. 37), and on May 18, 2016, he filed a Statement of Material Facts. (Doc. 40). Then, on May 23, 2016, the United States filed a Reply Brief in further support of its Motion for Summary Judgment. (Doc. 41).

Having received and reviewed both parties' briefs and supporting

documents, the court finds the United States' Motion for Summary Judgment ripe for disposition.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the

court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts

immaterial." *Celotex*, 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   DISCUSSION

In the plaintiff's Complaint, he asserted two FTCA claims against the United States. In Count I, the plaintiff alleges that medical personnel at the prison were negligent in diagnosing and treating the plaintiff's kidney stone and that the Bureau of Prisons was negligent for not maintaining an adequate health services policy and failing to train its health services employees. (Doc. 1, ¶¶ 29-34). In Count II, the plaintiff claims that the Bureau of Prisons was negligent in maintaining an inadequate contract policy for outsourcing health care issues. (Doc. 1, ¶¶ 35-38). The United States, in the instant motion, argues that both Count I and Count II are subject to summary judgment. Specifically, the United States claims that the plaintiff cannot meet his burden of proof in Count I unless he presents expert medical testimony, but his Certificate of Merit ("COM") bars him from utilizing expert testimony to support his FTCA claims. (Doc. 21, p. 7). Thus, according to the defendant, the plaintiff cannot satisfy the elements of Count I and the defendant is entitled to judgment as a matter of law. The United States next argues that the

plaintiff's claims in Count II are barred by the discretionary function exception to the FTCA. *Id.* at 12.  In its Reply Brief, the United States also presents the argument that the plaintiff's Statement of Facts does not comply with Local Rule 56.1, and as a result, the court should "deem all of the facts in the United States' Statement of Material Facts as admitted." (Doc. 41, p. 3).

The court will discuss each of the defendant's arguments and grounds for summary judgment in turn, below.

## A.   Plaintiff's Statement of Material Facts

The court will first address the defendant's argument regarding the plaintiff's Statement of Material Facts.

Middle District of Pennsylvania Local Rule 56.1 provides:

A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statement of material facts in . . . opposition to, a motion shall include references to the parts of the record that support the statements.

All material facts set forth in the statement required to be served

> by the moving party will be deemed admitted unless controverted
> by the statement required to be served by the opposing party.

Local Rule 56.1. The defendant contends that the plaintiff failed to file a proper response to the defendant's Statement of Facts. A review of the plaintiff's Statement of Facts reveals that plaintiff failed to respond to the numbered paragraphs set forth in the defendant's Statement of Facts. Instead, it appears that the plaintiff presents a list of facts he deems relevant, which are reminiscent of the facts listed in his Complaint. (Doc. 40). In addition, the plaintiff referenced parts of the record to support only two (2) out of the seventeen (17) paragraphs included in his Statement of Facts. *Id.* ¶¶ 9, 12. After reviewing the plaintiff's Statement of Facts, the court concludes that it does not comport with the requirements listed in Local Rule 56.1, and that it is therefore deficient. The defendant's Statement of Facts, however, did include a "separate, short and concise statement of the material facts," in fifty (50) numbered paragraphs, in which the defendant contends there is no genuine issue or dispute. Local Rule 56.1; Doc. 20. These numbered paragraphs are all supported by references to the record. (Doc. 20). Therefore, to the extent that the plaintiff fails to satisfy Local Rule 56.1, the court finds that the defendant's statement of facts must be deemed admitted. Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008)

9

("Since the SMF of Defendant are supported by evidence, and since Plaintiff has not properly responded to them, we shall accept all of Defendant's SMF as undisputed." (internal citations omitted)).

Because the court deems the defendant's facts as undisputed, we need not recount the facts for the purpose of this motion. They are included in their entirety in the defendant's Statement of Facts, and we incorporate them by reference. (Doc. 20).

The defendant argues that the admitted facts "effectively resolve" Count I of the Complaint, and that it is, therefore, automatically entitled to judgment as a matter of law on the stated Count. (Doc. 41, p. 3). "However, courts should not grant a motion for summary judgment based upon a technical violation of civil procedure when it would require the court to bypass the merits analysis required by Federal Rule of Civil Procedure 56." Spencer v. Biggins, No. 1:11-CV-01850, 2013 WL 5702312, at *1 (M.D. Pa. Oct. 18, 2013) (citing Ullrich v. U.S. Sec'y. of Veterans Affairs, 457 Fed. Appx. 132, 137 (3d Cir. 2012)); *see also* Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998) ("It is almost axiomatic that decisions on the merits are not to be avoided on the grounds of technical violations of procedural rules."). "A district court, before granting a summary judgment motion

pursuant to a local rule . . . must first determine whether summary judgment is appropriate—that is, whether the moving party has shown itself to be entitled to judgment as a matter of law. Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). Thus, this court must undergo a merits review of the plaintiff's claims, prior to simply granting summary judgment due to a deficient Statement of Material Facts.

## B.    Count I - Medical Negligence

The defendant argues that it is entitled to judgment as a matter of law because the plaintiff is barred from presenting expert testimony necessary to support his claims for negligence under Count I. (Doc. 21, pp. 7-12); (Doc. 41, pp. 3-6). The plaintiff's negligence claims relate to 1) the prison medical personnel's diagnosis and treatment of the plaintiff's kidney stone and 2) to the Bureau of Prisons failure to maintain an adequate health services policy and failure to train its health services employees in the proper diagnosis and treatment of inmates' health issues. (Doc. 1, ¶¶ 29-34).

### 1.    Medical Negligence - Failure to Diagnose and Treat

Under Pennsylvania law, medical negligence "can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct

11

arising from the rendition of professional medical services." Toogood v. Owen J. Rogal, D.D.S., P.C., 573 Pa. 245, 254-55 (2003) (internal citations and quotations omitted). Thus, a plaintiff must establish a duty owed by the physician or medical personnel to the patient, a breach of that duty, that the breach was the proximate cause of the plaintiff's injury, and that the damages suffered were a direct result of the harm. *Toogood,* 573 Pa. at 254-55. In addition, "[w]ith all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." Quinby v. Plumsteadville Family Practice, Inc., 589 Pa. 183, 199 (2006); *see also* Brady v. Urbas, 111 A.3d 1155, 1162 (Pa. 2015) ("Except in the most obvious cases of negligence (such as where a gauze pad is left inside a patient's body), expert testimony is necessary to establish the standard of care."); *Toogood,* 573 Pa. at 254-55 ("Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." (internal citations and quotations omitted)).

In this case, the plaintiff alleges medical malpractice on behalf of the

prison's medical personnel as well as on behalf of the Bureau of Prisons itself in Count I of the Complaint. Therefore, in order to establish a prima facie case for negligence, the plaintiff must provide expert testimony to demonstrate both the standard of care owed to the plaintiff, deviation from that standard, and causation.

Pennsylvania Rule of Civil Procedure 1042.3[1] further requires that, "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file . . . a certificate of merit signed by the attorney or party." Pa.R.C.P. No. 1042.3(a). This certificate of merit will either state that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm," "the claim that the defendant deviated from an acceptable professional standard is based solely

---

[1] The Third Circuit has held that Rule 1042.3 is substantive law and must be applied in federal cases sitting in diversity jurisdiction. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011) ("[W]e conclude that Pennsylvania Rule 1042.3, mandating a certificate of merit in professional negligence claims, is substantive law under the *Erie* Rule and must be applied as such by federal courts.").

on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard," or that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa.R.C.P. No. 1042.3(a)(1), (2), (3). Should a plaintiff certify that expert testimony is unnecessary, "in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." Pa.R.C.P. No. 1042.3(a)(3).

The plaintiff in this case filed a valid certificate of merit January 14, 2015, in which he stated that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claims against this defendant." (Doc. 16, p. 5); *see also* Doc. 33, p. 6. As we stated in our March 28, 2016 Memorandum,

> [T]he Pennsylvania Rules of Civil Procedure clearly state that a plaintiff is bound by his certification that "an expert is unnecessary for the prosecution of the claims, in the absence of exceptional circumstances." Pa.R.C.P. 1042.3(a)(3). The Rules further state that as a result of such certification, "the trial court shall *preclude the plaintiff from presenting testimony by an expert* on the questions of standard of care and causation." *Id.* (emphasis added); *see also* Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011) ("[T]he consequence of . . . filing [a certificate of merit] is a prohibition against offering expert

14

testimony later in the litigation, absent exceptional circumstances." (internal quotations omitted)). Again, *pro se* plaintiffs are not excluded from the binding and preclusive effects of a section (a)(3) certification. Illes v. Beaven, No. 1:12-CV-0395, 2012 WL 2836581, at *4 (M.D. Pa. July 10, 2012) (explaining that the *pro se* plaintiff's (a)(3) certification that "he does not need expert testimony precludes him from presenting such testimony"). Nor does a plaintiff's *pro se* status constitute an "exceptional circumstance" sufficient to override the expert testimony prohibition. Cuevas v. United States, No. CIV.A. 09-43J, 2013 WL 4500470, at *10 (W.D. Pa. Aug. 21, 2013) *aff'd*, 580 Fed. Appx. 71 (3d Cir. 2014).

In this case, as stated above, the plaintiff filed a certificate of merit in which he declared: "expert testimony of an appropriate licensed professional is unnecessary for prosecution of claims against this defendant." (Doc. 17, pp. 4, 5). As this certification falls within section (a)(3) of the Pennsylvania Rules of Civil Procedure, the plaintiff is therefore barred from offering expert testimony later in this litigation. Given this prohibition, the plaintiff cannot use an expert to support his claims . . .

(Doc. 33, pp. 8-10). Therefore, the court reiterates our previous finding that the plaintiff is barred from presenting expert testimony to demonstrate causation or standard of care in support of the medical negligence claims alleged in Count I of the Complaint. As stated above, Pennsylvania law requires expert testimony to establish a claim for medical negligence. Therefore, without the ability to present expert testimony, the plaintiff is unable to establish a prima facie case for medical negligence, and therefore, cannot succeed on claims included in Count I.

The plaintiff, however, argues that expert testimony is unnecessary and seems to urge this court to apply the exception to the requirement of expert testimony in medical negligence cases. As mentioned briefly above, the Pennsylvania Supreme Court has defined a narrow exception to the expert testimony requirement where "the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons, also conceptualized as the doctrine of *res ipsa loquitur*." Toogood v. Owen J. Rogal, D.D.S., P.C., 573 Pa. 245, 255 (2003) (internal citations omitted). Adopting the language of the Restatement (Second) of Torts, Section 328D, the Pennsylvania Supreme Court has stated that *res ipsa loquitur* applies when three conditions are met, "(a) *either a lay person is able to determine as a matter of common knowledge, or an expert testifies*, that the result which has occurred does not ordinarily occur in the absence of negligence; (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant; and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event." *Toogood*, 573 Pa. at 262 (citing Restatement (Second) §328D) (emphasis added).

The plaintiff seems to argue that the circumstances of this case are such that a lay person could easily understand and, therefore, fall within the stated exception. (Doc. 37, pp. 3-6). Specifically, the plaintiff claims that determining whether the defendant's delay in diagnosing and treating his kidney stone constitutes negligence is within the ordinary knowledge of lay persons. (Doc. 37, p. 3). He cites to his "'classic' symptoms of kidney troubles," supporting medical test results, and "serious activity infringing pain" as evidence that the fact finder would easily determine that delayed diagnosis and treatment constitutes negligence. (Doc. 37, ¶ 9). In his Statement of Facts, the plaintiff includes detailed allegations of his symptoms and the delay in scheduling the kidney stone removal procedure. (Doc. 40, ¶¶ 5-9). While the plaintiff does not point to or provide any evidence from the record to support his Statement of Facts, exhibits supplied by the defendant support his assertions. *See* Doc. 20, Ex. 1-A (medical record details the plaintiff's visits to the prison health services, pain complaints, test results and findings, and the scheduled kidney stone removal procedure).

According to the defendant's Statement of Facts, the plaintiff first complained of lower back pain in February, 2012. (Doc. 20, ¶¶ 1-3). Then, on March 9, 2012, the plaintiff underwent an x-ray indicating calcifications in his

kidneys, as well as a dipstick urinalysis, which came back abnormal. *Id.* ¶¶ 4-5. As a result, the Health Services "submitted a request for a urology consultation" for the plaintiff, which eventually was conducted by consulting urologist Anuj Chopra on May 7, 2012. *Id.* ¶¶ 8, 12. The results of the consultation were a "radiographic finding of a two centimeter right renal calculi [kidney stone] and a three centimeter left renal calculi [kidney stone]" and a recommendation that the plaintiff undergo a right pyelothotomy with stent and a left extracorporeal show wave lithotrypsin. *Id.* ¶¶ 12-13. The consultation request was submitted and approved by the Utilization Committee on that same day. *Id.* ¶ 14.

Then, on June 4, 2012, when the plaintiff reported to sick call complaining of continued pain, the plaintiff was informed that he was scheduled for the kidney stone removal procedure (right pyelothotomy), and he was prescribed medication to help relieve his pain symptoms. *Id.* ¶¶ 16, 17. On July 12, 2012, laboratory tests were ordered in anticipation for the plaintiff's upcoming procedure. (Doc. 20, ¶ 18). According to the record, that procedure was "rescheduled due to the consulting urologist's relocation to another hospital." (Doc. 20, Ex. 1, ¶ 17). Finally, on October 22, 2012, three months later, the plaintiff began undergoing the preoperative laboratory tests

and preparation for his coming hospital trip. (Doc. 20, ¶¶ 21-24). The plaintiff underwent the kidney removal procedure on October 30, 2012. *Id.* ¶ 25. Dr. Chopra performed the procedure; after removing the kidney stone, Dr. Chopra noted that "attempts to reconstruct the pelvis were unsuccessful due to long-term inflammation and chronic scarring with parenchymal thinning of the kidney, and that he decided to perform the nephrectomy due to the inability to reconstruct the renal pelvis and poor nature of the kidney." *Id.* ¶ 31. The record demonstrates that Dr. Chopra then performed the nephrectomy (kidney removal procedure) and that the plaintiff recovered over the next few days and returned to USP Lewisburg on November 4, 2012. (Doc. 20, Ex. 1, ¶¶ 24-27).

As stated previously, the plaintiff fails to dispute or provide any documents to contradict the facts presented by the defendant, and thus, they must be deemed admitted and taken to be true. The defendant argues that these facts demonstrate that the "issues here are complex, present a situation challenging medical judgment and expertise, and address the adequacy of medical care provided on a number of occasions by the BOP." (Doc. 41, p. 5). As such, these complicated medical issues, according to the defendant, require medical testimony and do not fall within the exception to the requirement of expert testimony. *Id.* The court agrees that arriving at a

19

medical diagnosis and then determining the appropriate medical treatment plan is complicated and requires medical judgment. In evaluating the prison medical personnel's opinions and treatment of the plaintiff's flank pain and kidney problems, the fact finder would need more than his common knowledge and experience as a layperson. Thus, the court finds that the narrow exception does not apply, and medical expert testimony is required to prove both the standard of care and causation for the plaintiff's medical negligence claims in Count I of the Complaint.[2] *See* Cuevas v. United States, No. 09-cv-43J, 2013 WL 4500470, at *10 (W.D. Pa. Aug. 21, 2013), *aff'd*, 580 Fed. Appx. 71 (3d Cir. 2014) (finding that a determination regarding whether delayed diagnosis of a foot injury constitutes medical malpractice "involves complex issues of medical care" and, therefore, the narrow exception to the expert testimony requirement does not apply). There are no genuine disputes of any facts material to determining whether the narrow exception to expert testimony applies and would allow expert testimony, such that the court could

---

[2] The court notes that the plaintiff appears to argue that prison personnel were negligent in failing to diagnose his kidney issues at an earlier time, and also negligent in delaying the plaintiff's necessary kidney surgery. Both of these claims require an understanding of complex medical standards and expertise as stated above. As such, the analysis above applies to the negligence claims relating to conduct prior to surgery and in delay of the surgery.

not determine whether the narrow exception applies under these circumstances.

### 2. Medical Negligence - Failure to Maintain Adequate Health Services Policy

The plaintiff's claims for negligent *diagnosis* and *treatment* are subject to summary judgment, as stated above. However, the defendant, in its Brief in Support of Summary Judgment, does not explicitly address whether the plaintiff's inability to present expert testimony also bars the second claim included in Count I, that the BOP was negligent in *not maintaining an adequate health services policy* and *failing to train* its health services employees. This particular claim, relating to policy and training, while seemingly distinct, is based upon the premise that the BOP medical personnel negligently treated and diagnosed the plaintiff causing him serious injuries, and that this negligence was a result of improper training and supervision. Specifically, the plaintiff claims: "[the BOP medical personnel] were lacking in training to diagnosis[sic] my condition in a timely manner to effectively protect my health." (Doc. 1, ¶ 31). If the plaintiff cannot prove that the medical personnel were negligent in diagnosing or treating him, it then follows that he cannot prove any claims based upon such negligence. Without a showing that the BOP medical personnel were negligent, the plaintiff cannot

21

prove that BOP policies and training of the same medical personnel were deficient and led to his alleged injury. Thus, the lack of expert testimony bars the plaintiff's claims against the medical personnel for negligent treatment and diagnosis as well as those claims for inadequate training and deficient medical policies against the BOP itself, as alleged in Count I of the Complaint.

As a result of the foregoing analysis, this court concludes that the plaintiff's certificate of merit precludes him from introducing expert testimony necessary to prove his claims *for* and *based upon* medical negligence. Therefore, the defendant is entitled to judgment as a matter of law for all claims in Count I of the plaintiff's Complaint.

**C.      Count II - Negligent Maintenance of Outside Contract Policy**

In the defendant's Brief in Support of its motion for summary judgment, it further argues that the discretionary function exception to the FTCA bars plaintiff's claims of negligent hiring, supervision, and retention of Dr. Chopra, and, as a result, it is entitled to judgment as a matter of law. (Doc. 21, p. 15). The plaintiff, on the other hand, argues that his situation does not fall within the gamut of the discretionary function exception, and therefore, the defendant is not entitled to summary judgment in its favor. (Doc. 37, p. 7).

The United States Code enumerates a set of exceptions to the FTCA's

waiver of sovereign immunity. 28 U.S.C. §2680. One exception included is the

discretionary function exception, which provides that the FTCA's waiver of

sovereign immunity shall not apply to the following claim:

> Any claim based upon an act or omission of an employee of the Government, exercising due care . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. §2680(a). The discretionary function exception "marks the

boundary between Congress' willingness to impose tort liability upon the

United States and its desire to protect certain governmental activities from

exposure to suit by private individuals." United States v. S.A. Empresa de

Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

To determine whether the discretionary function exception provides a

bar to claims in a particular case, the court must conduct a two-part inquiry.

The first part of the inquiry focuses on "whether the act giving rise to the

alleged injury and thus the suit involves an 'element of judgment or choice.'"

Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008) (quoting United

States v. Gaubert, 499 U.S. 315, 322 (1991)). "The requirement of judgment

or choice is not satisfied if a federal statute, regulation, or policy specifically

prescribes a course of action for an employee to follow, because the

employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal citations and quotations omitted); *see also Merando*, 517 F.3d at 165.

If the conduct at issue involves an element or judgment or choice, the court must then conduct the second part of the inquiry and determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23 (citing *Varig Airlines*, 467 U.S. at 813). "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Merando*, 517 F.3d at 164-165 (quoting *Gaubert*, 499 U.S. at 322-23).[3] "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25; *see also*

---

[3] "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991).

Mitchell v. United States, 225 F.3d 361, 363-64 (3d Cir. 2000).

In this case, the defendant argues that the discretionary function exception effectively bars Count II of the plaintiff's complaint. In Count II, the plaintiff claims that the United States Bureau of Prisons' "contract policy for outsourcing health care issues that cannot be treated at the respective facility . . . is defective," (Doc. 1, ¶ 35), as it is inadequate to screen health care personnel, it does not provide proper training to contracting health care personnel, and it fails to include methods of monitoring the effectiveness of the policy. *Id.* ¶¶ 36-37. The defendant argues that Congress granted the United States BOP with broad discretion to contract for medical services, and that this discretion is rooted in public policy. As a result, the defendant concludes that the conduct at issue falls neatly within the stated exception, such that the defendant is entitled to sovereign immunity.

The court must conduct the two part inquiry outlined above to determine whether the FTCA discretionary function exception applies and bars the plaintiff's claims under Count II of the Complaint. First, the court must identify the conduct at issue and examine whether this conduct involves an element of choice or judgment. The conduct at issue is the BOP's decision to contract to provide medical services to inmates outside of the prison.

25

Congress provided the BOP with the authority to manage and regulate all Federal penal and correctional institutions, and also the authority to provide for the protection and "safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. §4042(a)(2), (3). The Third Circuit has held that "this statute leaves the implementation of these duties to the discretion of BOP officials." Rinaldi v. United States, 460 Fed. Appx. 80, 81 (3d Cir. 2012). Attending to the medical needs of inmates is most certainly an integral aspect of *caring for* and *keeping safe* inmates, as required by United States law. *See* 18 U.S.C. §4042. Therefore, implementation of health and medical care duties is left to the discretion or judgment of the BOP. No federal statute or regulation requires that the BOP contract with outside medical institutions to provide health care to inmates, nor do any statutes or regulations prohibit such conduct.[4] In

---

[4] The plaintiff argues that the BOP has issued Program Statements that specifically outline "the manner in which [the BOP] will transact" its duty to provide adequate healthcare to inmates. (Doc. 37, ¶ 30). The plaintiff further appears to argue that these program statements specifically govern the BOP's contracting procedures and oversight, and that they leave no room for discretion. *Id.* ¶ 31. The plaintiff concludes that the discretionary function should not apply to his medical contracting claim. However, the court notes that while the plaintiff makes reference to specific Program Statements in his Brief in Opposition to the Motion for Summary Judgment, he does not attach these program statements to his Brief, his Statement of Material Facts, or any other submission that he has filed with this court. Without the ability to review the language and content of these alleged Program Statements, the court

addition, no federal statutes or regulations prescribe the method or policy by which the BOP enters into contracts, monitors such contracts, or screens and trains contracting medical personnel. Thus, the BOP's decision to outsource medical care as well as the policy by which the BOP enters into contracts with outside institutions or physicians for medical care is left to the discretion of the BOP itself. The BOP may decide how to fulfill its statutory duty to care for and provide for the safekeeping of inmates. *See* Donaldson v. United States, 281 Fed. Appx. 75, 77 (3d Cir. 2008).

The defendant correctly notes that the Third Circuit has yet to directly address this factual scenario, *i.e.*, whether BOP decisions to enter into contracts for the protection and safekeeping of inmates, fall within the discretionary function exception. However, several non-binding decisions provide helpful guidance and support the conclusion that the exception applies.

The case most directly on point was brought in the Eastern District of Virginia. In that case, the court held that the BOP's decision to contract with an outside physician for the Federal inmate plaintiff's foot diagnosis,

_____

cannot make a finding that these Program Statements include specific, non-discretionary mandates that would render the discretionary function exception inapplicable, as the plaintiff desires.

27

treatment, and follow-up fell within the discretionary function exception. *Hodge v. United States, 443 F.Supp.2d 795, 799 (E.D. Va. 2006)*, *aff'd*, *224 Fed. Appx. 235 (4th Cir. 2007)*. The *Hodge* court conducted the two part inquiry set forth in *United States v. Gaubert* and previously discussed above. *Hodge*, 443 F.Supp.2d at 799. After finding that no statute or regulation "requires or forbids the United States from contracting with physicians to provide medical care for prison inmates," the court determined that the conduct at issue was indeed discretionary in nature and satisfied part one of the inquiry. *Id.* The *Hodge* court then determined that the United States' discretionary conduct satisfied the second part of the inquiry because it involved policy-based decisions that Congress intended to protect; specifically, *Hodge* notes that "the choice to contract with an outside physician required the BOP to balance the needs of the government against the expense of engaging in such services. Likewise, it had to consider other factors, such as administration, payment, and access to the prison, all of which involve judgment based on policy." *Id.* at 799 (internal citations omitted) (citing *Williams v. United States, 50 F.3d 299, 310 (4th Cir. 1995)*).

Another District Court in the Southern District of Indiana addressed the issue of whether the discretionary function exception applies to contracts for

28

medical services in federal prisons. Gottlieb v. United States, 624 F. Supp. 2d 1011 (S.D. Ind. 2008). Like the court in *Hodge*, the *Gottlieb* court also concluded that "[t]he BOP decision to contract with the hospital for certain medical services, including specialized and emergent care, involved the type of policy-based, and therefore discretionary, decisions protected by the discretionary function exception." *Gottlieb*, 624 F. Supp. 2d at 1023-24.

The facts in *Hodge* and *Gottlieb* are analogous to the instant case. Furthermore, this court finds that the courts in *Hodge* and *Gottlieb* correctly apply Supreme Court precedent and are consistent with the application and analysis of the discretionary function exception within this Circuit. Therefore, we find that these cases are persuasive and support the conclusion that the discretionary function exception applies in the instant case.

Ultimately, the court finds that the BOP's decision to contract with an outside institution for the plaintiff's medical treatment involves the necessary element of choice and is grounded in the social, economic, or political goals of 18 U.S.C. §4042(a)(2), (3), which aims to provide for the care and safekeeping of federal inmates. The BOP's choice to engage in such conduct clearly is the type of policy-making decision that the discretionary function exception was designed to protect. *See* United States v. Gaubert, 499 U.S.

315, 323 (1991). Thus, after examining the relevant statutes and case-law, the court holds that the BOP's actions in contracting with outside medical institutions and physicians as well as their decisions to apply certain procedures and policies in contracting for such services fall within the discretionary function exception, and as a result, the defendant is entitled to sovereign immunity and the plaintiff's claims under Count II are barred. The defendant is entitled to judgment as a matter of law, and Count II must be dismissed.

## III.    CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment, (Doc. 19), will be **GRANTED**. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 23, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1149-04.wpd